341 S.E.2d 700

**Paula TUCKER**

v.

**Terry TUCKER.**

No. 16991.

Supreme Court of Appeals of West Virginia.

Feb. 6, 1986.

Rehearing Denied April 4, 1986.

LaVerne Sweeney, Grafton, for appellant.

Caton N. Hill, Jr., Philippi, Gerald E. Jones, John S. Kaull, Jones, Williams, West & Jones, Clarksburg, for appellee.

PER CURIAM:

This is an appeal from an order entered on September 24, 1985, in the Circuit Court of Barbour County, dismissing, without a hearing, the appellant's petition to modify a child custody decree.

I

Alvin T. Tucker, the appellant, and Paula D. Tucker, the appellee, were granted a divorce on June 7, 1984, on the ground of irreconcilable differences. An agreement between the parties, pursuant to which the appellee was given custody of the couple's minor child, was incorporated into the divorce decree. The agreement also contained provisions for visitation by the appellant. The appellant subsequently moved to the State of Georgia, whereupon the visitation provisions in the agreement were modified. The court ratified said modifications.

On September 3, 1985, the appellant filed a petition, seeking custody of his daughter. He alleged that the appellee was living with a man not her husband and that this man had sexually abused or assaulted the daughter of the appellant and appellee. It was also alleged that the appellee was not properly caring for the child.

The appellant revealed in his petition that he became concerned about the child's behavior during a summer visitation period, and because of his concern, he had the child examined by a child psychologist and a pediatrician. The appellant alleged that reports of the examinations confirmed his suspicions that she was a victim of sexual abuse. Consequently, the appellant did not return the child to her mother at the end of the visitation period.

The circuit court had before it a report of Dr. Michael Yura, child psychologist, and Dr. E.G. Kreider, a pediatrician. Dr. Yura reported that "there may have been some sexual contact." Dr. Kreider could not rule out the possibility of sexual contact. Upon consideration of the two reports and upon the request of the appellee that the man with whom she was living, Jeffrey Phillips, be given a polygraph examination, the court ordered the return of the child to the appellee, with the following conditions: that the appellee not remove the child from the State of West Virginia and have no

contact with Phillips until the matter was finally resolved. The appellant objected to these rulings.

On September 13, 1985, Phillips underwent a polygraph examination in the State of Georgia. The report of the examination along with a resume of the polygraph operator were submitted to the court.[1] Upon receipt of the report and a resume, the judge entered an order in which he found that the polygraph operator was competent and qualified, and further found "that based on the report submitted by him, Jeffrey L. Phillips, did not, in fact, sexually abuse or assault" the child. The record does not reflect any objection to the admissibility of the polygraph test results. The judge dismissed the modification petition, dissolved the previously imposed travel restrictions, and cancelled a scheduled hearing on the petition.

The appellant now contends that he was denied due process, in violation of Article III, Section 10 of the West Virginia Constitution and the Fourteenth Amendment to the U.S. Constitution, when the judge dismissed the modification petition without holding a hearing.

## II

■ A petition to modify a child custody order, brought pursuant to *W. Va. Code*, 48–2–15 [1984],[2] must contain sufficient allegations of facts and circumstances that would warrant a change of custody. *Acord v. Acord,* 164 W.Va. 562, 565, 264 S.E.2d 848, 850 (1980).

The standard for determining whether an order involving child custody should be modified is well established in this jurisdiction. "To justify a change of child custody, in addition to a change of circumstances of the parties, it must be shown that such change would materially promote the welfare of the child." Syl. pt. 2, *Cloud v. Cloud,* 161 W.Va. 45, 239 S.E.2d 669 (1977).

Courts in other jurisdictions have concluded that error is committed where custody determinations are made on the basis of investigative reports, without affording the parties an opportunity to present evidence or cross-examine the makers of the reports. *Thompson v. Thompson,* 238 Minn. 41, 55 N.W.2d 329 (1952); *Cornelison v. Cornelison,* 53 Idaho 226, 23 P.2d 252 (1933); *Smith v. Smith,* 209 Wis. 605, 245 N.W. 644 (1932). *Fewel v. Fewel,* 23 Cal.2d 431, 144 P.2d 592 (1943); *Moody v. Gilbert,* 208 Ga. 784, 69 S.E.2d 874 (1952); *Yearsley v. Yearsley,* 94 Idaho 667, 496 P.2d 666 (1972). *See* 27B C.J.S., Divorce § 317(8)a. *See also Rosier v. Rosier,* 162 W.Va. 902, 253 S.E.2d 553 (1979); *Pugh v. Pugh,* 133 W.Va. 501, 56 S.E.2d 901 (1949); *In re Simmons Children,* 154 W.Va. 491, 177 S.E.2d 19 (1970).

It has been held that due process requires a hearing, if one is requested, on a petition to modify a child custody decree and the opportunity to cross-examine the makers of investigative reports upon which a court relies in determining child custody. *Stanford v. Stanford,* 266 Minn. 250, 123 N.W.2d 187 (1963); *Malone v. Malone,* 591 P.2d 296 (Okla.1979).

■ In *Phillips v. Phillips,* 24 W.Va. 591 (1884), this Court recognized the right of a noncustodial parent to have a hearing

---

**1.** We have consistently held that the results of polygraph examinations are not admissible in criminal proceedings. *See* Syl. pt. 2, *State v. Frazier,* 162 W.Va. 602, 252 S.E.2d 39 (1979); Syl. pt. 3, *State v. Hartshorn,* 175 W.Va. 274, 332 S.E.2d 574 (1985); *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173, 192 (1983); *State v. Acord,* 175 W.Va. 611, 336 S.E.2d 741, 744 (1985). However, we have not addressed the issue of admissibility of polygraph tests in administrative proceedings, *see Pryor v. Hutchinson,* 167 W.Va. 679, 280 S.E.2d 325, 326, n. 2 (1981) or in civil proceedings. We do not address on this appeal any challenge to the admissibility of the results of the polygraph test. On remand, the appellant may bring his objection before the Circuit Court.

**2.** *W. Va. Code,* 48–2–15 [1984] provides, in pertinent part:

(e) [A]nd the court may also from time to time afterward, on the verified petition of either of the parties or other proper person having actual or legal custody of the minor child or children of the parties, revise or alter such order concerning the custody and maintenance of the children, and make a new order concerning the same, as the circumstances of the parents or other proper person or persons and the benefit of the children may require.

on a petition to modify the child custody award made in a former divorce decree. We reaffirm that right and hold that under the due process clause, Article III, Section 10 of the West Virginia Constitution, a parent who files a petition for a change of child custody alleging sufficient grounds to warrant such change, *Acord v. Acord, supra*, is entitled to a hearing on the merits of the petition. "The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard." Syl. pt. 2, *Simpson v. Stanton*, 119 W.Va. 235, 193 S.E. 64 (1937). While *Acord v. Acord* focused on the right of a custodial parent, the right of a noncustodial parent to petition for a change of custody is also subject to due process protections.

### III

■ Applying these principles to the case before us, we find that the appellant's petition to modify was sufficient on its face. It contained serious allegations of a change of circumstances which, if proved, might warrant a modification of the former custody order. The documents considered by the court were in conflict on the factual issues of whether the child was a victim of sexual abuse and whether Phillips had sexually abused her. The court erred by resolving these conflicts without holding the requested hearing.

The appellee contends that the appellant acquiesced in the informal procedure. However, there is nothing in the rather sparse record to substantiate the appellee's contention. No oral representations, arguments of counsel or agreements were transcribed. Clearly no testimony was taken. A hearing scheduled at the request of the appellant was cancelled. There is no evidence of a waiver by the appellant of his right to a hearing.

In addition to being a denial of the father's due process rights, the court's summary dismissal of the modification petition under these circumstances was an inadequate method of insuring that the child's rights and welfare were protected.

"In a contest involving the custody of infant children, their welfare is the guiding principle by which the discretion of the trial court will be controlled and on appeal, its determination of custody will not be set aside unless there was a clear abuse of discretion." Syl. pt. 4, *Murredu v. Murredu*, 160 W.Va. 610, 236 S.E.2d 452 (1977).

We are in full agreement with the Supreme Court of Idaho which has said:

> The welfare of minor children of a union dissolved by divorce is of such grave importance that a court should never be satisfied in determining a matter of this kind except upon the production of the best evidence possible to be procured.
>
> The affidavits are, to a degree, stereotyped and conflicting, and because of the violent charges and counter-charges therein, we do not feel the disposition of these children should rest upon the trial court's or our conclusions drawn from them, but should be based upon the testimony of witnesses in open court, tested by cross examination.

*Cornelison v. Cornelison, supra*, 53 Idaho at 270, 23 P.2d at 253.

For the foregoing reasons, the order of the Circuit Court of Barbour County, dismissing the appellant's modification petition and cancelling a hearing on the petition, is reversed and set aside, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.