488 S.E.2d 28

**Gregory E. JOHNSON, Plaintiff Below, Appellant,**

v.

200 W.Va. 28

488 S.E.2d 28

**Carol J. JOHNSON nka Allman, Defendant Below, Appellee.**

**No. 23901.**

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1997

Decided May 30, 1997.

Sherrilyn D. Farkas, Wheeling, for Appellant.

Carol J. Allman, Pro se.

PER CURIAM:

Gregory E. Johnson appeals the denial of his petition for modification of child support by the Circuit Court of Brooke County. On appeal, Mr. Johnson maintains that the circuit court erred, as a matter of law, in attributing income to him based on his former occupation rather than federal minimum wage as required by the child support guidelines. Mrs. Allman (formerly Mrs. Johnson) maintains that the circuit court justified in writing its deviation from the child support guidelines. Because the circuit court's order adequately justifies the deviation from the child support guidelines, we affirm the order of the circuit court.

I.

*Facts and Background*

On July 23, 1992, after 12 years of marriage, Mr. Johnson filed for a divorce. The parties have two children born on August 8, 1983 and March 7, 1985. Because Mr. Johnson was working as an electrician at Ohio Edison Company during the separation, he was ordered to pay $850 per month in child support, the mortgage payment, both car payments and costs of health care for both children. After Mr. Johnson's plant closed in May 1993, he petitioned in June 1993 for a reduction in his child support. Although no decision on Mr. Johnson's petition was entered until December 1993, Mr. Johnson in July 1993 reduced his child support to $300 per month, stopped paying on the car Mrs. Allman and the children were using, and stopped paying costs of health care.

In December 1993, based on Mr. Johnson's unemployment benefits of approximately $170 per week, the family law master reduced Mr. Johnson's child support obligation to $396 per month and ordered payment of a $2,250 arrearage.

The final divorce order ordered Mr. Johnson to pay $396 per month in child support

and children's health care costs. The final divorce order included an Amended Property Settlement Agreement, which according to Mrs. Allman, is a contract between the parties in which she gave consideration, namely claims for alimony, arrearage in child support and claims to Mr. Johnson's pension/lump sum settlement, for the $396 per month child support. Mr. Johnson maintains that the final divorce order indicates that the amount of his child support can be changed by the court.

On May 16, 1994 after Mr. Johnson's unemployment benefits ended, he again petitioned for a modification of support. There was a lengthy delay in getting this matter before the circuit court caused in part by the retirement of a circuit judge. Finally on April 4, 1995, Mrs. Allman, alleging that Mr. Johnson failed to pay the required child support, filed a contempt petition. After a hearing on April 20, 1995, the newly assigned judge referred the matter to the family law master. After a hearing, the family law master on September 15, 1995 issued a recommended order reducing Mr. Johnson's child support to $174.12 per month retroactive to May 1994. The recommended child support of $174.12 per month was based on attributed income of full-time employment at federal minimum wage. The family law master attributed income to Mr. Johnson based on a finding that Mr. Johnson "has made only 2.6 attempts to find employment each month since May, [sic] 1994 assuming forty (40) applications over a fifteen (15) month period." Because the retroactive reduction in child support resulted in an overpayment, the family law master recommended that the overpayment be used to offset the children's medical care costs.

Both parties timely filed exceptions to the recommended decision. Mrs. Allman's exceptions are not germane to this appeal. Mr. Johnson's exceptions included: (1) a question about the treatment of an overpayment caused by the retroactive reduction in child support; (2) request for clarification about the child support payment method; (3) request for time limitation for Mrs. Allman to submit to him a request for payment of children's health care costs; and (4) "notice that the child support figures were calculated differently ... when the plaintiff was responsible for paying medical insurance premium than for the current time period when the defendant became solely responsible for the medical insurance premium."

On December 20, 1995, the circuit court entered a final order rejecting Mr. Johnson's petition for modification of child support. The circuit court adopted most of the family law master's recommended decision; however, the circuit court rejected the recommendation concerning attributed income and elected to base Mr. Johnson's attributed income on his "earning capacity as an electrician in the local job market." Based on the higher attributed income, the circuit court found no justification to modify the child support order downward but continued to require Mr. Johnson to pay $396 per month in child support. Because there was no retroactive reduction, the circuit court also granted a $2,221 decretal judgment against Mr. Johnson for medical insurance premiums.[1]

On appeal, Mr. Johnson's major contention is that the circuit court erred in failing to adopt the recommendations of the family law master concerning attributed income. Mr. Johnson also alleges problems with the different treatment of medical insurance premiums, different amounts of self-support allowances, and failure to make an advanced provision for Mr. Johnson's third child who was born in January 1996.

## II.

### Discussion

### A.

### Standard of Review

■ In this divorce proceeding, we are asked to review the findings and conclusions

---

1. On March 6, 1996, Mrs. Allman filed a petition for enforcement of the support order. Although the record indicates that a hearing was held on March 22, 1996, no transcript of that hearing or order concerning the petition for enforcement is in the record. According to Mr. Johnson's brief, the circuit court found Mr. Johnson owed $1,153.52 in child support and found him in contempt for failing to comply with the court's order. These matters are not before the Court except insofar that they are based on the circuit court's order of December 20, 1995.

made by a circuit court, some of which resulted from the adoption of the recommendations of the family law master and one which deviated from those recommendations. When a circuit court adopts the family law master's recommendations we apply the three-pronged standard of review set forth in Syllabus Point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995):

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

*In accord* Syllabus Point 1, *Porter v. Bego*, 200 W.Va. 168, 488 S.E.2d 443 (1997).

■ On the issue of attributed income, we apply the standard of review stated in *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995) because the circuit court did not adopt the family law master's recommendation. Syllabus Point 1 of *Stephen L.H.* states:

> A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard.

*In accord* Syllabus Point 1, *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996).

Mindful of our standards of review, we consider first, if the circuit court should have adopted the family law master's recommendation concerning attributed income, and second, if the circuit court erred in adopting the family law master's recommendations concerning certain calculations in the child support formula.

**B.**

*Attributed Income*

We have repeatedly emphasized the importance of following the child support guidelines in determining the amount of child support. Recently in *Porter v. Bego, supra*, we found that the amount of child support determined by application of the child support guidelines was presumed correct, and that the reasons overcoming the presumption must be stated on the record. Syllabus Point 3 of *Porter v. Bego* provides:

> In determining the amount of child support, *W.Va.Code*, 48A–1B–1 [1996] creates a rebuttable presumption that the amount of the award which would result from the application of the Guidelines for Child Support, *W.Va.Code*, 48A–1B–1 to –16 [1997], is the correct amount of child support to be awarded. Any reason for deviation from the Guidelines and the amount of the calculated Guidelines award must be stated on the record, preferably in writing on the worksheet or in the order. *W.Va.Code*, 48A–1B–14 [1996].[2]

■ Mr. Johnson begins by maintaining that both the family law master and the circuit court erred in attributing any income to him because he was enrolled in a two-year retraining program. However, because Mr. Johnson failed to include this argument in his exceptions to the family law master's recommended order that was filed with the circuit court, the matter was not addressed to the circuit court and therefore, was not preserved for appeal. We note that this issue raises a factual question concerning whether the classes attended by Mr. Johnson were part of "a plan of economic self-improvement which will result, within a reasonable time, in an economic benefit to the children" as required under 6 *C.S.R.* 78 § 16–4.1.1.2 [1988]. *See Whitlow v. Bd. of Education of Kanawha County*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993) ("when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal"); *Shrewsbury v. Humphrey*, 183 W.Va. 291, 395

---

**2.** *See Porter v. Bego*, 200 W.Va. at 173–174, 488 S.E.2d at 448–449, Slip. Op. at 11–12, for a discussion of the 1996 revisions to Articles 1A and 1B of Chapter 48A and how the changes relate to the *Code of State Rules (C.S.R.)*, which was used to determine child support in this case.

S.E.2d 535 (1990); *Cline v. Roark*, 179 W.Va. 482, 370 S.E.2d 138 (1988); *Crain v. Lightner*, 178 W.Va. 765, 364 S.E.2d 778 (1987); *Trumka v. Clerk of the Circuit Court of Mingo County*, 175 W.Va. 371, 332 S.E.2d 826 (1985).[3]

Mr. Johnson also maintains that because he made "diligent efforts to find and accept available work ... to no avail" as required by 6 *C.S.R.* 78 § 16–4.1.1.4, no income should have been attributed to him. Both the family law master and the circuit court found that Mr. Johnson had not made "diligent efforts" based on a finding that he had "made only 2.6 attempts to find employment each month since May, [sic] 1994 assuming forty (40) applications over a fifteen (15) month period." Mr. Johnson again did not note this factual finding in his exceptions to the circuit court and we decline to address it on appeal. *See Whitlow supra.*

■■■ Mr. Johnson's main contention concerning attributed income is that the circuit court erred in attributing income higher than the federal minimum wage. Attributed income is defined in Syllabus Point 4 of *Porter v. Bego, supra,* which states:

"Attributed income" means income not actually earned by a parent, but which may be attributed to the parent because he or she is unemployed, is not working full time, is working below full earning capacity, or has non-performing or under-performing assets. *W.Va.Code,* 48A–1A–3(a) [1997]. Attributed income consists of moneys which a support obligor should have earned had he or she diligently pursued reasonable employment opportunities, or

reasonably utilized, applied, or invested his or her assets.

The *Code of State Rules* establishes two methods for determining the amount of attributed income, either "the support obligor's earning capacity in the local job market" or "full-time employment at the current minimum wage." 6 *C.S.R.* 78 §§ 16.4.1.2 and 16.4.1.3 [1988], respectively.[4] However, 6 *C.S.R.* 78 § 16.4.1.4 [1988] requires that the attributed income be the lesser of the two methods by providing: "In any case attributed income shall be the lesser of the calculations made in 4.1.2 or 4.1.3."

In this case, the family law master recommended that income be attributed to Mr. Johnson based on full-time employment at federal minimum wage. However, the circuit court rejected that recommendation and attributed income to Mr. Johnson based on his "earning capacity in the local job market." The family law master's recommendation was rejected by the circuit court in a 26–page opinion detailing the reasons for the rejection. The circuit court, by order entered on December 20, 1995 found that "the Family Law Master erred only insofar as his failure to consider the plaintiff, Gregory E. Johnson's, earning capacity as an electrician in the local job market for the purposes of attribution of income." The circuit court's order noted Mr. Johnson's limited attempts at obtaining employment and his documentation of "only six (6) such attempts." The court concluded that Mr. Johnson "has not made diligent efforts to find and accept available suitable employment."

---

**3.** Mr. Johnson also raised the following issues for the first time on appeal: (1) unequal treatment of the self-support deduction based on part-time employment; and (2) failure to anticipate the birth of his third child by making anticipated adjustments in his support obligations for his two other children. Because these matters were not presented to the circuit court by Mr. Johnson, we decline to address them on appeal.

**4.** The applicable provisions of the rules provide: 4.1.2. If a court or master determines that a limitation on income is not justified in that it is a result of a self-induced decline in income, a refusal to occupy time profitably, or an unwillingness to accept employment and earn an

adequate sum, the court or master may consider evidence establishing the support obligor's *earning capacity in the local job market,* and may attribute income to such obligor. (emphasis added).

4.1.3. As an alternative to the method of determining attributed income provided for in subdivision 4.1.2, where a support obligor is remarried and is unemployed, underemployed or is otherwise working below full earning capacity, the court or master may attribute income to the support obligor in an amount not to exceed that which could be derived by the obligor from *full-time employment at the current minimum wage.* (emphasis added).

■ In certain limited circumstances, we have held that the child support guidelines, although presumptively correct, can be deviated from based on a case-by-case analysis. However, any deviation must be addressed on the record. In Syllabus Point 1 of *Wood v. Wood*, 190 W.Va. 445, 438 S.E.2d 788, 190 W.Va. 445 (1993) we stated:

"[T]he amount of child support shall be in accordance with the child support guidelines established pursuant to *W.Va.Code*, 48A–2–8(a) [1989], unless the family law master or the court shall determine, in a written finding or a specific finding on the record, that the application of the guidelines would be either unjust, inappropriate, waived by the parties pursuant to the safeguards outlined in *W.Va.Code*, 48A–2–8(a)(1) [1989], or contrary to the best interests of the children or the parties." Syl. Pt. 3, in part, *Gardner v. Gardner*, 184 W.Va. 260, 400 S.E.2d 268 (1990).

*See* Syllabus Point 3, *Porter v. Bego, supra*; Syllabus *Holley v. Holley*, 181 W.Va. 396, 382 S.E.2d 590 (1989); *W.Va.Code*, 48A–1B–14 [1996](requiring on the record statement of the reasons for deviation from guidelines).[5]

In this case, the circuit court stated its reasons for deviation from the child support guidelines in its order, and based on our examination of the record, we agree with the circuit court that, given the facts of this case, the family law master abused his discretion in attributing income based on full-time employment at the federal minimum wage. The father's failure to seek diligently comparable employment should not result in a reduction in child support of more than $200 per month. Such a reduction is unjust and not in the best interests of the children.

We find that the circuit court's attribution of income based on Mr. Johnson's earning capacity in the local job market was not an abuse of discretion and we affirm the circuit court's decision denying Mr. Johnson's petition to modify his child support obligation.

### C.

#### Insurance Computation

■ Mr. Johnson also maintains that the circuit court erred in adopting the family law master's recommendation concern the treatment of medical insurance payments. Specifically Mr. Johnson maintains error under 6 *C.S.R.* 78 § 16–12.1 [1988]. However, section 12.1 of 6 *C.S.R.* 78 does not apply to Mr. Johnson, but does apply to Mrs. Johnson because the medical insurance premiums are deducted from her pay. 6 *C.S.R.* 78 § 16–12.1 [1988] states:

The term "deductions for the benefit of children" shall mean the amount *deducted and withheld by an employer* from income of a support obligor and paid to third parties for the benefit of the support obligor's children, including, but not limited to, hospital insurance and medical, dental or optical insurance. (emphasis added).

Given the language of the rule, we find no error in the family law master's deduction of the amount of the medical insurance premium from her gross income.

Mr. Johnson requested that we examine the worksheets which showed that Mr. Johnson's attributed income created a support obligation for the applicable periods well in excess of the ordered monthly child support and the medical insurance. Given the circumstances of this case, we find that the circuit court did not abuse its discretion in

5. *W.Va.Code*, 48A–1B–14 [1996] states:

(a) If the court or master finds that the guidelines are inappropriate in a specific case, the court or master may either disregard the guidelines or adjust the guidelines-based award to accommodate the needs of the child or children or the circumstances of the parent or parents. In either case, the reason for the deviation and the amount of the calculated guidelines award must be stated on the record (preferably in writing on the worksheet or in the order). Such findings clarify the basis of the order if appealed or modified in the future.

(b) These guidelines do not take into account the economic impact of the following factors and can be possible reasons for deviation:

(1) Special needs of the child or support obligor;

(2) Educational expenses for the child or the parent . . .;

(3) Families with more than six children;

(4) Long distance visitation costs; or

(5) The child resides with third party.

34

adopting the family law master's recommendation concerning the calculation of Mrs. Johnson's gross income.

For the above stated reasons, the order of the Circuit Court of Brooke County is affirmed.

Affirmed.